# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| NORMA I. WINFFEL,<br>BRANDON WINFFEL,<br>KAYLA WINFFEL,<br>JULIA RODRIGUEZ,<br>ALEJANDRO WINFFEL,<br>CARL UNGER and<br>VIRGINIA HENDERSON,<br><br>Plaintiffs,<br><br>v.<br><br>WESTFIELD PROPERTY MANAGEMENT,<br>LLC,<br>MONTGOMERY MALL OWNER, LLC,<br>PROFESSIONAL SECURITY<br>CONSULTANTS and<br>PROFESSIONAL SECURITY CONCEPTS,<br>INC.,<br><br>Defendants. | Civil Action No. TDC-19-0838 |

## MEMORANDUM OPINION

Plaintiffs Norma I. Winffel, Brandon Winffel, Kayla Winffel, Julia Rodriguez, Alejandro Winffel, Carl Unger, and Virginia Henderson have filed this tort action against Defendants Westfield Property Management, LLC, Montgomery Mall Owner, LLC, Professional Security Consultants, and Professional Security Concepts, Inc. in connection with the shooting deaths of two men in the parking lot of the Westfield Montgomery Mall in Montgomery County, Maryland. Pending before the Court is a Motion to Dismiss filed by Professional Security Consultants and Professional Security Concepts, Inc. Having reviewed the briefs and submitted materials, the

Court finds that no hearing is necessary. D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss will be DENIED.

## BACKGROUND

For the purposes of deciding this Motion, the Court accepts the facts asserted in the Complaint as true. On the afternoon of May 5, 2016 at approximately 4:38 p.m., Eulalio Tordil shot and killed his wife at High Point High School in Prince George's County, Maryland. He fled the scene of the shooting and spent the night driving around the Washington, D.C. metropolitan area. During this time, the Prince George's County Police Department "put out a lookout Mr. Tordil's vehicle," and local media widely reported the murder and the fact that the suspect was still at large. Compl. ¶ 28, ECF No. 1.

The next morning, May 6, 2016, Tordil entered the parking lot of the Westfield Montgomery Mall ("the Mall"), which is located near Interstate 495, one of the primary routes connecting Prince George's County to Montgomery County. At the time, the Mall was owned and operated by Defendants Westfield Property Management, LLC ("Westfield") and Montgomery Mall Owner, LLC ("Montgomery Mall Owner"). The Mall had contracted with Defendants Professional Security Consultants and Professional Security Concepts, Inc. (collectively, "the PSC Defendants"), companies that specialize in "providing security services to malls, government municipalities, hotels and private communities." Compl. ¶¶ 16, 20. Under the contract, Professional Security Consultants was required to, among other things, "[c]reate a visible presence at the [Mall] to deter criminal activity," "[p]atrol parking areas," "[p]rovide a secure and safe environment for all . . . customers and visitors" to the Mall, "[u]ndertake patrols of the . . . vehicle parking areas . . . to identify and deter security and safety risks," and "[p]rovide and maintain an

2

environment which fosters crime reduction." Standard Contractor's Service Agreement at 13, 17, Pls.' Suppl. Mem. Opp'n Mot. Dismiss Ex. 1, ECF No. 41-1.

Tordil entered the parking lot in order to steal a car. When he approached a woman near her vehicle, she began screaming and running toward Malcom Winffel ("Winffel") and Carl Unger, who happened to be walking through the parking lot. As she did so, Tordil began firing a gun at them. Winffel was struck twice in the chest, went into cardiac arrest, and died after being transported to Suburban Hospital. Unger suffered serious injuries when he was struck three times in the back and once in the foot, but he survived. Tordil fled the area, shot and killed another individual at another location, and was finally arrested. He pleaded guilty in two separate cases to a total of three counts of murder and three counts of attempted murder.

Unger, his wife Virginia Henderson, Winffel's widow Norma Winffel, Winffel's children Brandon Winffel and Kayla Winffel, and Winffel's parents Julia Rodriguez and Alejandro Winffel filed this civil action against Defendants, asserting wrongful death and survival claims as to Winffel and negligence and loss of consortium claims as to Unger. All the claims are based on a theory of negligence by Defendants. Although Westfield and Montgomery Mall Owner have filed an Answer to the Complaint, the PSC Defendants have filed the pending Motion to Dismiss.

## DISCUSSION

In the Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the PSC Defendants assert that Plaintiffs have failed to state a plausible claim for relief. Specifically, they argue that the Complaint lacks sufficient facts to establish two of the elements of a negligence claim. First, they contend that the allegations do not support a finding that they had a special duty to protect Winffel or Unger from the acts of third persons, and that they did not have sufficient notice of the threat posed by Tordil to trigger a general duty to protect the two men. Second, they

argue that even if they owed a duty of care to Winffel and Unger, Plaintiffs have not adequately pleaded that any breach of that duty was the proximate cause of Plaintiffs' injuries.

## I. Legal Standards

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

In order to establish a claim of negligence, a plaintiff must prove that (1) the defendant had a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered an injury or loss; and (4) the breach proximately caused the loss or injury. *Patton v. U.S. of Am. Rugby Football*, 851 A.2d 566, 570 (Md. 2004) (citation omitted).

## II. Duty of Care

The PSC Defendants first argue that the Complaint fails to allege sufficient facts to establish that they had a duty to protect visitors to the Mall such as Winffel and Unger (collectively, "the Victims"). Whether there was such a duty is a question of law. *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60 A.3d 1, 9 (Md. 2013) (citation omitted). Generally, "a private person is under no special duty to protect another from criminal acts by a third person." *Scott v. Watson*, 359 A.2d 548, 552 (Md. 1976) (citing Restatement (Second) of Torts § 315 (Am. Law Inst. 1965)). Such a duty, however, may exist when established by statute or by the existence of a

4

special relationship between the parties. *Id.* Here, Plaintiffs point to, among other sources, a section of the Restatement (Second) of Torts as establishing a special relationship between the PSC Defendants on the one hand and the Victims on the other. In particular, section 324A states that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (Am. Law Inst. 1965). Courts applying Maryland law have consistently treated section 324A as part of Maryland's tort law. *See Brady v. Ralph M. Parsons, Co.*, 609 A.2d 297, 300 n.2 (Md. 1992) (citing section 324A for the proposition that "[u]nder some circumstances, when a person undertakes to render services to another which he should recognize as necessary for the protection of a third person, that person may have a duty to use reasonable care to protect his undertaking"); *Sheridan v. United States*, 969 F.2d 72, 74 n.3 (4th Cir. 1992) ("Assumption of a duty, where none generally exists, and consequent potential liability in negligence under Maryland law are governed by Restatement of Torts (2d) §§ 323, 324A (1965)."); *see also In re Sabin Oral Polio Vaccine Prods. Liability Litig.*, 774 F. Supp. 952, 954-55 (D. Md. 1991) (citations omitted) (noting that "[i]t is undisputed that the doctrine [set forth in section 324A] is part of the tort law of . . . Maryland"); *E.G. Rock, Inc. v. Danley*, 633 A.2d 485, 491 (Md. Ct. Spec. App. 1993) (stating that section 324A has "been recognized as part of Maryland law").

Among other examples, the Restatement provides the following illustration of how liability under section 324A may arise:

> The A Telephone Company employs B to inspect its telephone poles. B negligently inspects and approves a pole adjoining the public highway. Because of its defective condition the pole falls upon and injures a traveler upon the highway. B is subject to liability to the traveler.

Restatement (Second) of Torts § 324A cmt. d, illus. 2. Likewise, Plaintiffs assert, where the owners of the Mall retained the PSC Defendants to provide security at the Mall, the PSC Defendants owed a duty to shoppers and Mall visitors to act with reasonable care.

The PSC Defendants argue that section 324A is inapplicable here because, while it may establish a duty on the part of a retained contractor to refrain from causing injury to visitors through its own negligence, it does not create a duty to protect those visitors from the tortious acts of third parties. In support this argument, the PSC Defendants assert that the illustrative examples provided in section 324A do not involve harm caused by the criminal acts of third parties. The PSC Defendants also claim that section 314A of the Restatement, which provides that common carriers, innkeepers, and landowners owe a duty to protect individuals in their care, is the only Restatement provision imposing a duty on certain parties to protect against the conduct of third parties.

Courts, however, have applied section 324A as a matter of Maryland law even when the alleged harm was based on the intentional, criminal acts of third parties. In *Bias v. IPC International Corporation*, 107 F.3d 865, 1997 WL 100925 (4th Cir. 1997) (unpublished table decision), the United States Court of Appeals for the Fourth Circuit considered whether a company retained to provide security at a shopping mall could be liable in tort when a patron of the shopping mall was gunned down in the shopping mall's parking lot. *Id.* at *5. Invoking section 324A, the court held that "[a]s the company responsible for providing security for the shopping mall and its

patrons, [the security company] had a duty to protect [the plaintiff] and all of the patrons from the risk of physical harm occasioned by third parties." *Id.* at *5 (granting summary judgment to the security company based on a lack of proximate causation). Similarly, the Court of Special Appeals of Maryland held in *E.G. Rock* that both a landlord and its property management company could be deemed negligent and liable under section 324A to a tenant for harm resulting from an assault upon the tenant on the premises. *E.G. Rock*, 633 A.2d at 491-93. Other courts applying section 324A in other jurisdictions have likewise held that liability can extend to acts of third parties. *See, e.g., Mukthar v. Latin Am. Svc.*, 42 Cal. Rptr. 3d 563, 566-67, 569-70 (Cal. Ct. App. 2006) (holding that a security service employed by a store could be liable to a store employee assaulted by a customer); *Erickson v. Curtis Inv. Co.*, 447 N.W.2d 165, 170-71 (Minn. 1989) (holding that a security company that patrolled a parking ramp could be liable to a victim who was raped on the parking ramp). This Court finds no bar on liability pursuant to section 324A for negligence that resulted in harm caused by the intentional acts of third parties. Thus, Plaintiffs may base their claims on section 324A.

Here, Plaintiffs have pleaded sufficient facts to support a claim that the PSC Defendants owed visitors to Montgomery Mall—including the Victims—a duty to exercise reasonable care in protecting them. In their Complaint, Plaintiffs allege that Westfield and Montgomery Mall Owner contracted with Professional Security Consultants ("PSC") to provide security for the Mall and its patrons. They have also submitted a copy of the contract establishing that PSC undertook to provide such security. *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (holding that the court may consider on a motion to dismiss an extrinsic document where it was integral to and relied on in the complaint and where the non-offering party did not challenge its authenticity). Specifically, the contract provided that PSC would "[s]upply all qualified personnel needed to

7

fulfill Security Operations" at the Mall and set out specific duties for PSC and its employees, including to "[c]reate a visible presence at the Shopping Centers to deter criminal activity," "[p]atrol parking areas" within the Mall, and "[r]estrict unauthorized access to common areas." Standard Contractor's Service Agreement at 12-14. The contract's "Security Work Plan" further detailed duties of the security guards employed by PSC, which included to "[p]rovide a secure and safe environment for all . . . customers and visitors" to the Mall, "[u]ndertake patrols of the . . . vehicle parking areas . . . to identify and deter security and safety risks," and "[p]rovide and maintain an environment which fosters crime reduction." *Id.* at 17. Where Plaintiffs have plausibly alleged that PSC undertook "to render services to another," namely the owners of the Mall, which it "should recognize as necessary for the protection of . . . third person[s]," Restatement (Second) of Torts § 324A, the Court finds that Plaintiffs have alleged sufficient facts to support the conclusion that the PSC Defendants owed a duty of care to the Victims.

The PSC Defendants further contend that the Motion should be granted because even if it owed a general duty of care, it had no "actual or constructive notice that plaintiffs—not the general population—were at unreasonable risk of injury while at the mall property." Mot. Dismiss at 6, ECF No. 25. However, there is no requirement in section 324A, which defines a party's duty to exercise reasonable care when rendering services that it "should recognize as necessary for the protection of a third person," that a defendant must know that a specific, named individual is at risk of injury. Restatement (Second) of Torts § 324A; *cf. Tuel v. Hertz Rental Equip. Corp.*, 508 F. App'x 212, 220 (4th Cir. 2013) (holding that under section 324A, as incorporated into Virginia law, the question is whether the plaintiff proceeding under section 324A was a "foreseeable third party" whom the defendant's negligent undertaking could have harmed). Indeed, none of the

8

illustrative examples provided with section 324A evince a requirement that a specific plaintiff be identified as at risk of injury.

The PSC Defendants' argument rests largely on *Jackson v. A.M.F. Bowling Centers, Inc.*, 128 F. Supp. 2d 307 (D. Md. 2001), in which the court concluded, on summary judgment, that a bowling alley was not liable to a plaintiff who had been stabbed during a fight on the premises and then was directed out a door into an area where he was exposed to further attacks by his assailants. *Id.* at 309, 314. Beyond the fact that *Jackson* was decided on a full evidentiary record rather than at the pleading stage, it fails to support the PSC Defendants' argument. *Jackson* appears to conclude that the defendant had no heightened duty of care under Restatement section 314A to render medical aid or to specifically protect the plaintiff because the defendant did not have specific knowledge that the plaintiff had been attacked or stabbed. *Id.* at 312. Section 314A, however, is not at issue here, as Plaintiffs rely on section 324A. Moreover, the court went on to find that a general duty of care was owed even without such specific knowledge. In so ruling, the court first found that prior altercations at the bowling alley were insufficient to put the defendant on notice of the potential for the kind of fight that injured the plaintiff not, as the PSC Defendants claim, because these altercations did not reveal a risk to that particular plaintiff, but rather because they did not reveal a risk of that particular kind of attack. *Id.* at 313. The court then found that, without reference to any risk to the plaintiff in particular, the bowling alley *did* have sufficient notice to trigger a duty to protect because its hiring of security guards and searching of patrons showed that it had "some idea that patrons might attempt to enter with prohibited items." *Id.* at 313-14 (granting summary judgment based on lack of proximate causation). Here, where Tordil's murder of his wife and the fact that he remained at large the next day were highly publicized, the Complaint has alleged sufficient facts, viewed under the Rule 12(b)(6) standard, to support a

conclusion that the PSC Defendants had actual notice of a heightened and unreasonable risk to Mall visitors such as the Victims and thus owed them a duty of care.

### III. Causation

Finally, the PSC Defendants argue that the Complaint does not allege sufficient facts to support a finding that any negligence on their part was "a proximate cause of the harm alleged." *Pittway Corp. v. Collins*, 973 A.2d 771, 786 (Md. 2009) (quoting *Stone v. Chi. Title Ins.*, 624 A.2d 496, 500 (Md. 1993)). "To be a proximate cause for an injury, 'the negligence must be 1) a cause in fact, and 2) a legally cognizable cause.'" *Id.* (quoting *Hartford Ins. Co. v. Manor Inn*, 642 A.2d 219, 230 (Md. 1994)). Specifically, the PSC Defendants argue that Tordil's criminal acts constituted a superseding cause relieving them of liability.

Even where a party's negligent conduct could be deemed to have "created a situation which afforded an opportunity" to a third party to commit a tort or crime, such a third-party act constitutes a superseding cause breaking the chain of proximate causation unless the party "at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime." *Scott v. Watson*, 359 A.2d 548, 556 (Md. 1976) (quoting Restatement (Second) of Torts § 448). In *Scott*, the court further interpreted this principle as providing that "[a] breach of duty by the defendant would result in his liability in the third-party criminal activity context only if the breach enhanced the likelihood of the particular criminal activity which occurred." *Id.* at 556. Illustrative of this principle, courts have concluded that proximate causation could be established where "inadequate maintenance of the common area enhanced the likelihood of an assault in the vestibule" of a building, where "the lack of repair of a defective lock enhanced the likelihood of a

theft," and where "the absence of a lock on the front door enhanced the likelihood of the robbery of the tenant in the common area" of a building. *Id.* (collecting cases).

Likewise, here, Plaintiffs allege that the PSC Defendants, among other negligent omissions, failed "to adequately staff the mall and the parking lot with security guards," "to have security vehicles patrolling the parking lot," and "to set up rings of protection that would have been able to identify Mr. Tordil and/or his vehicle once he entered the premises." Compl. ¶¶ 84, 99. Such alleged failures, taken as true, could have "afforded an opportunity" for Tordil to engage in the shooting and "enhanced the likelihood" of Tordil's shooting of the Victims. *Scott*, 359 A.2d at 556.

Although under normal circumstances, the lack of such measures may not have been negligent, and the PSC Defendants may not have had reason to understand that such omissions could have increased the likelihood of a crime, the circumstances on May 6, 2016 were far from normal. As of that day, Tordil had just murdered his wife, remained at large, and was suspected of seeking to steal a car. The murder and subsequent manhunt were highly publicized, with Tordil's photograph broadcast to the public to assist in the police investigation. Montgomery County was on "high alert." Compl. ¶ 31. These allegations, viewed in the light most favorable to Plaintiffs, could support the conclusion that the PSC Defendants realized or should have realized that the failure to provide the identified security measures was providing an opportunity for, and enhancing the likelihood of, an assault or murder in the Mall parking lot. Thus, the Court finds that the Complaint adequately alleges proximate causation.

## CONCLUSION

For the foregoing reasons, the PSC Defendants' Motion to Dismiss, ECF No. 24, will be DENIED. A separate Order shall issue.

Date: January 22, 2020

THEODORE D. CHUANG
United States District Judge