**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| NORMA WINFFEL, Individually and as Personal Representative of the Estate of MALCOM WINFFEL, *et al.*, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| WESTFIELD PROPERTY MANAGEMENT, LLC, *et al.*, | ) ) ) |
| Defendants. | ) ) |

Civil Action No. 19-cv-00838-LKG

Dated:  May 19, 2022

<u>**MEMORANDUM OPINION AND ORDER**</u>

## I.   INTRODUCTION

Plaintiffs bring this tort action alleging negligence, wrongful death, loss of consortium and survival action claims against the owners and operators of the Westfield Montgomery Mall (the "Mall") and the Mall's security company, in connection with a tragic shooting that occurred in the Mall's parking lot on May 6, 2016.  *See generally* Compl., ECF No. 1.  Defendants have moved for summary judgment on plaintiffs' claims, pursuant to Fed. R. Civ. P. 56.  *See* Def. Mot., ECF No. 81.  For the reasons that follow, the Court **GRANTS** defendants' motion for summary judgment and **DISMISSES** the complaint.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.   Factual Background

Plaintiffs are the family members and/or representatives of the Estate of Malcom Winffel,

---

[1] The facts recited herein are taken from the complaint ("Compl."); defendants' statement of undisputed material facts ("SMF"); defendants' motion for summary judgment ("Def. Mot.") and memorandum in support thereof ("Def. Mem."); plaintiffs' response in opposition to defendants' motion for summary judgment ("Pl. Resp."); defendants' reply brief ("Def. Reply"), and the exhibits attached to the parties' joint appendix ("J.A. Ex.").  Except where otherwise noted, the facts recited herein are undisputed.

who is deceased, and Carl Unger and his wife, Virginia Henderson.  Compl. at ¶¶ 1-9.
Defendants Montgomery Mall Owner, LLC, and Westfield, LLC (collectively, the "Mall
Defendants") are the owner and manager of the Mall.  *Id.* at ¶¶ 11-14; *see also* Def. Mem. at 5,
ECF No. 81-2.  Defendants Professional Security Consultants and Professional Security
Concepts, Inc. (collectively, "PSC") are security companies that provide security at the Mall.
*See* Compl. at ¶¶ 15-20.

<u>The May 6, 2016, Incident</u>

It is undisputed that, on May 5, 2016, at approximately 4:38 p.m., Eulalio Tordil shot and
killed his wife while she was picking up their children at High Point High School in Beltsville,
Maryland.  *Id.* at ¶ 26; Def. Mem. at 4.  Following this fatal shooting, Mr. Tordil fled the scene
and a manhunt was launched.  Compl. at ¶¶ 26–27.

Mr. Tordil was at large for 18 hours before he arrived at the Mall on May 6, 2016, at
approximately 11:15 a.m.  Def. Mem. at 4-5.  It is undisputed that Mr. Tordil approached a
woman sitting in her vehicle in the Mall's parking lot near Macy's, in what is assumed to be an
attempted carjacking.  Compl. at ¶¶ 35-36; Def. Mem. at 5.  It is also undisputed that Carl Unger
and Malcom Winffel arrived at the parking lot at the same time.  *See* Def. Mem. at 5; *see
generally* Pl. Resp., ECF No. 82.  Upon their arrival, the woman ran towards Mr. Unger and Mr.
Winffel, shouting "help me."  J.A. Ex. A at 62:10-17, ECF No. 84-3.  When Mr. Unger and Mr.
Winffel attempted to render aid, Mr. Tordil began shooting at them.  *Id.* at 62:17-19.  Mr.
Winffel was fatally shot twice in the chest, and Mr. Unger was shot three times in the back and
once in the foot.  Compl. at ¶¶ 38-39.

It is undisputed that the Mall contracted with PSC at the time of the May 6, 2016,
incident to provide security for the Mall.  *See id.* at ¶ 17; Def. Mem. at 5.  The parties also agree
that, at the time of the May 6, 2016, incident, police officer David Kocevar was parked in the
Mall's parking lot near Macy's in a marked police cruiser, approximately 50 yards away from
the scene of the crime.  *See* J.A. Ex. B at 41:7-42:12, 56:9-13, ECF No. 84-4.  It is also
undisputed that Officer Kocevar was not aware of any alert issued by the Montgomery County
Police Department regarding Mr. Tordil.  *See id.* at 28:11-17, 29:6-11.

Upon hearing the gunfire, Officer Kocevar exited his vehicle and ran towards the scene.
*Id.* at 45:12-46:2, 46:19-22.  Upon his arrival, he spotted Mr. Tordil running away on foot.  *Id.* at

47:4-12.

Mr. Tordil subsequently fled the Mall and traveled to Aspen Hill, Maryland, where he shot and killed another individual before being apprehended.  Compl. at ¶ 40.  Mr. Tordil has since been convicted of these crimes and he is currently serving a term of life in prison.  *Id.* at ¶ 41; Def. Mem. at 5.

<u>The Mall's Security And Criminal History</u>

It is undisputed that, at the time of the May 6, 2016, incident, PSC provided security at the Mall and PSC employees were unarmed and trained to observe and report any criminal activity to the Montgomery County Police Department.  *See* Compl. at ¶¶ 15-21; J.A. Ex. C at 15:22-16:3, 17:2-6, ECF No. 84-5.  PSC also relied on the Montgomery County Police Department to provide it with information about any relevant criminal activity or threat to the Mall.  *See* J.A. Ex. C at 44:13-15, 62:11-20.

On May 6, 2016, there were seven PSC employees on patrol at the Mall.  *See* J.A. Ex. D at 30:16-22, ECF No. 84-7.  In addition, other security measures present at the Mall at the time included security cameras, including a large domed camera located on the Macy's building adjacent to the parking lot where the shooting occurred.  J.A. Ex. C at 160:22–161:2.[2]

It is undisputed that a criminal incident occurred at the Mall three years before Mr. Tordil's attack—a stabbing in a parking lot located on the opposite side of the Mall from the Macy's parking lot.  Def. Reply at 10-11, ECF No. 84; *see generally* Pl. Resp.  Lastly, it is also undisputed that there were no known incidents involving Mr. Tordil at the Mall before the May 6, 2016, incident.  *See id.*; *see generally* Pl. Resp.

**B.      Procedural Background**

Plaintiffs commenced this action on March 19, 2019.  *See* Compl.  On January 23, 2020, the Court issued a Memorandum Opinion and Order denying defendants' motion to dismiss this matter pursuant to Fed. R. Civ. P. 12(b)(6).  ECF Nos. 51, 52.  On July 19, 2021, defendants

---

[2] It is undisputed that, on May 6, 2016, PSC employee Ninette Wilson and PSC trainee Steve Gonzalez were performing mobile patrol of the Mall's parking lots.  *See* J.A. Ex. D at 32:4–13.  During the patrol, Ms. Wilson and Mr. Gonzalez scanned the security markings in the area of the Macy's parking deck "within five to ten minutes" prior to Mr. Tordil's attack.  J.A. Ex. E at 48:13–17, ECF No. 84-9.

filed a motion for summary judgment and a memorandum in support thereof, pursuant to Fed. R. Civ. P. 56. *See* Def. Mot.; Def. Mem. Plaintiffs filed a response in opposition to defendants' motion for summary judgment on September 13, 2021. *See* Pl. Resp. Defendants filed a reply in support of their motion for summary judgment on October 5, 2021. *See* Def. Reply.

Defendants' motion for summary judgment having been fully briefed, the Court resolves the pending motion.

## III.   LEGAL STANDARDS

### A.   Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B.      Negligence Claims

Under Maryland law, the elements of a negligence claim are: (1) a duty to protect the plaintiff from injury; (2) a breach of that duty; (3) the breach of the duty proximately caused the loss or injury suffered by the plaintiff; and (4) the plaintiff suffered actual loss or injury. *See Corinaldi v. Columbia Courtyard, Inc.*, 873 A.2d 483, 489 (Md. Ct. Spec. App. 2005); *see also Scott v. Watson*, 359 A.2d 548, 552 (Md. 1976) (Negligence requires: (1) "a duty or obligation which the defendant is under to protect plaintiff from injury"; (2) "a failure to discharge that duty"; and (3) "actual loss or injury to the plaintiff proximately resulting from that failure").[3] Whether a plaintiff has presented sufficient evidence of the elements of negligence is generally a question for the fact finder, but the existence of a legal duty is a question of law to be decided by the Court. *See Corinaldi*, 873 A.2d at 489.

In general, there is no duty under Maryland law to control the conduct of a third person so as to prevent him or her from causing physical harm by criminal acts or intentional torts. *See Rhaney v. Univ. of Md. E. Shore*, 880 A2d. 357, 364 (Md. 2005). And so, absent a duty imposed by either a statute or a special relationship, a private party is under no legal duty to control a

---

[3] Maryland courts have held that a duty in a negligence claim is an obligation to conform to a particular standard of conduct toward another. *See Troxel v. Iguana Cantina, LLC*, 29 A.3d 1038, 1049-50 (Md. Ct. Spec. App. 2011) (citing *Veytsman v New York Palace, Inc.*, 906 A.2d 1028, 1034 (Md. Ct. Spec. App. 2006)). In determining the existence of a duty, the Court considers, among other things:

> The foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*Corinaldi*, 873 A.2d at 489 (citations omitted).

person's criminal acts so as to prevent harm to another.  *See Scott*, 359 A.2d at 552 (citing Restatement (Second) of Torts § 315).

In this regard, the Fourth Circuit has held that there is no special duty imposed upon a landlord to protect its tenants against crimes perpetrated by third parties on the landlord's premises.  *Nails v. Community Realty Co*., No. 97-1716, 1998 WL 879511, at *2 (4th Cir. Dec. 17, 1998) (citing *Scott*, 359 A.2d at 552); *see also Kirchoff v. Abbey*, No. 10-1532, 2011 WL 4711898, at *2 (D. Md. Oct. 5, 2011) (holding that the question of whether a landlord has a duty to protect tenants from criminal activity is a legal question).  But, the Fourth Circuit has recognized that a landlord who has set aside areas for the use of its tenants in common, owes them duty of reasonable and ordinary care to keep the premises safe.  *See Nails*, 1998 WL 879511, at *1.

The Fourth Circuit has also held that a landlord's duty to exercise reasonable care for the safety of the tenants, in common areas under its control, is sufficiently flexible to be applied to cases involving criminal activity.  *See id.*  And so, if a landlord knows, or should know, of criminal activity against persons or property in the common areas, the landlord has a duty to take reasonable measures to eliminate the conditions contributing to the criminal activity.  *Id.*  But, the Fourth Circuit has also cautioned that this duty arises primarily from criminal activities existing on the landlord's premises, rather than from knowledge of general criminal activities in the neighborhood.  *See id*.; *see also Scott*, 359 A.2d at 554; *Brown v. Baltimore & Ohio R. Co.*, 805 F.2d 1133, 1138 (4th Cir. 1986).

This Court has also recognized that the special relationship between a business owner and business invitee can create a legal duty to use reasonable and ordinary care to keep premises safe and to take affirmative action for the aid and protection of a business invitee.  For example, in *Jackson v. A.M.F. Bowling Ctrs., Inc.*, this Court held that a business owner owed a plaintiff a duty to use reasonable and ordinary care to keep the premises safe and that the owner also had a duty to take affirmative action for the aid and protection of the plaintiff, if the owner had knowledge of the plaintiff's injury and giving aid would not have placed the owner in the path of danger.  128 F. Supp. 2d 307, 312-13 (D. Md. 2001) (finding that the defendant owed no duty to the plaintiff, because the plaintiff had not asserted that he had been a particular target of the fight that occurred on the premises and the plaintiff failed to inform the defendant of his injuries).  The

6

Court of Appeals of Maryland has also recognized that the special relationship of shopkeeper/business and business invitee can give rise to a duty to aid and protect under certain circumstances.  For example, in *Southland Corp. v. Griffith*, the Court of Appeals of Maryland held that an employee of a business has a legal duty to take affirmative action for the aid or protection of a business invitee who is in danger while on the business's premises, provided that the employee has knowledge of the injured invitee and the employee is not in the path of danger. 633 A.2d 84, 91-92 (Md. 1993).

Lastly, Maryland courts have also held that premises liability provides relief to a plaintiff who is subjected to dangerous conditions on an establishment's premises.  *Troxel v. Iguana Cantina, LLC*, 29 A.3d 1038, 1048 (Md. Ct. Spec. App. 2011).  And so, the owner of a premises can be found liable under a premises liability theory, if the owner:  (1) controlled a dangerous or defective condition; (2) had knowledge or should have had knowledge of the injury-causing condition; and (3) the harm suffered was a foreseeable result of that condition.  *See id.; see also Veytsman v New York Palace, Inc.*, 906 A.2d 1028, 1034 (Md. Ct. Spec. App. 2006) (quoting *Hemmings v. Pelham Wood Ltd. Liab. Ltd. P'ship*, 826 A.2d 443, 452 (Md. 2003)).

## IV.    LEGAL ANALYSIS

Defendants have moved for summary judgment in their favor in this tort action upon five grounds.  *See generally* Def Mem.  First, defendants argue that plaintiffs cannot prevail upon their tort claims, because the undisputed material facts in this case show that defendants had no legal duty to protect Mr. Unger and Mr. Winffel from the criminal activity that occurred at the Mall on May 6, 2016.  *Id.* at 8-13.  Second, defendants argue that, even if they owed such a legal duty, the undisputed material facts show that they did not breach this duty.  *Id*. at 15-17.

Third, defendants contend that the undisputed material facts in this case also show that their actions were not the proximate cause of the injuries to Mr. Unger and Mr. Winffel.  *Id.* at 17-18.  In addition, defendant PSC contends that it had no special relationship with Mr. Unger and Mr. Winffel to create a duty to act or to prevent the May 6, 2016, incident.  *Id.* at 19-23. Lastly, defendants argue that the Court should exclude certain testimony by plaintiffs' expert, David Levenberg, because this testimony is not reliable and not relevant.  *Id.* at 23-34.  And so,

7

defendants request that the Court grant their motion for summary judgment and dismiss this matter.  *Id.* at 35.

Plaintiffs counter that summary judgment is not warranted in this case, because defendants owed a duty of care to Mr. Unger and Mr. Winffel in connection with the May 6, 2016, incident, due to:  (1) defendants' knowledge of similar violent crimes occurring on the Mall's premises; (2) the conduct of Mr. Tordil on May 5, 2016, and while on the Mall's premises on May 6, 2016; and (3) PSC's contract to provide security at the Mall.  Pl. Resp. at 15-21.  Plaintiffs also argue that summary judgment in defendants' favor is not warranted, because, among other things, there are material facts in dispute regarding whether defendants breached this duty by failing to use reasonable care to protect Mr. Unger and Mr. Winffel during the May 6, 2016, incident.[4]  *Id.* at 21-26.  Lastly, plaintiffs argue that Mr. Levenberg should be permitted to provide expert testimony in this case, because of his experience in the mall security industry.  *Id.* at 27-35.  And so, plaintiffs request that the Court deny defendants' motion for summary judgment.  *Id.* at 35.

For the reasons that follow, the undisputed material facts in this case show that defendant PSC did not have a special relationship with Mr. Unger and Mr. Winffel to create a legal duty to protect them from the criminal activity that occurred on May 6, 2016.  The undisputed material facts also show that the Mall Defendants did not owe Mr. Unger and Mr. Winffel a legal duty to either:  (1) take reasonable measures to eliminate conditions contributing to criminal activity on the Mall's premises; (2) warn Mr. Unger and Mr. Winffel of any dangerous condition on the Mall's premises; or (3) take affirmative action for the aid and protection of Mr. Unger and Mr. Winffel on May 6, 2016.  And so, the Court GRANTS defendants' motion for summary judgment and DISMISSES the complaint.

### A.    PSC Did Not Owe A Duty To Mr. Unger And Mr. Winffel

As an initial matter, defendants persuasively argue that PSC did not owe a duty to protect or to aid Mr. Unger and Mr. Winffel.  It is well-established under Maryland law that, absent a duty imposed by either a statute or a special relationship, a private party is under no legal duty to

---

[4] Plaintiffs also argue that defendants breached their duty of care and that this breach proximately caused their injuries.  *See* Pl. Resp. at 26-27.

control a person's criminal acts so as to prevent harm to another. *See Scott*, 359 A.2d at 552 (citing Restatement (Second) of Torts § 315). Plaintiffs do not dispute that there is no statute that imposes a duty upon PSC to protect or to aid Mr. Unger and Mr. Winffel from the criminal acts of a third party. *See generally* Pl. Resp. And so, the Court considers whether Maryland law recognizes a special relationship that could impose such a duty on PSC.

In this regard, Maryland law recognizes that the special relationship of a landlord and tenant, and the special relationship between a business owner and a business invitee, can create a legal duty of care. *See Jackson,* 128 F. Supp. 2d at 311-12; *Nails*, 1998 WL 879511, at *2. But, the undisputed material facts in this case make clear that PSC was neither the owner nor the landlord of the Mall when the May 6, 2016, incident occurred. *See generally* Def. Mem.; Pl. Resp. Plaintiffs' argument that PSC's contract with the Mall creates a duty for PSC to protect and to aid Mr. Unger and Mr. Winffel is also unpersuasive and advanced without any factual or legal support. *See* Pl. Resp. at 20-21. Given this, the undisputed material facts in this case show that PSC owed no duty to Mr. Unger and Mr. Winffel. And so, the Court GRANTS defendants' motion for summary judgment on this issue and DISMISSES plaintiffs' tort claims against PSC.

## B.    The Mall Defendants Did Not Owe A Duty To Mr. Unger And Mr. Winffel

The undisputed material facts also show that the Mall Defendants did not owe a duty to Mr. Unger and Mr. Winffel for several reasons.

First, the undisputed material facts show that the Mall Defendants did not owe a duty to Mr. Unger and Mr. Winffel to take reasonable measures to eliminate any conditions contributing to criminal activity on the Mall's premises, because the Mall Defendants did not know, and should not have known, of any recent criminal activity on the premises. In this regard, the Fourth Circuit has recognized that a landlord who has set aside areas for the use of its tenants in common owes them duty of reasonable and ordinary care to keep the premises safe. *See Nails*, 1998 WL 879511, at *2. And so, if a landlord knows, or should know, of criminal activity against persons or property in the common areas, the landlord has a duty to take reasonable measures to eliminate the conditions contributing to the criminal activity. *See id.* (observing that this duty arises primarily from criminal activities existing on the landlord's premises, rather than from knowledge of general criminal activities in the neighborhood).

In this case, the undisputed material facts make clear that there was no recent criminal activity on the Mall's premises prior to the May 6, 2016, incident. In fact, there had been no shootings at all at the Mall before the May 6, 2016, incident. *See generally* Def. Mem.; Pl. Resp. It is also undisputed that only one criminal incident occurred at the Mall before the May 6, 2016, incident—a stabbing that occurred three years earlier in a different Mall parking lot. Def. Reply at 11; Pl. Resp. at 16-17.

The undisputed material facts also show that the Mall Defendants did not know that Mr. Tordil posed any threat to the Mall prior to the May 6, 2016, incident. In this regard, it is undisputed that some information about Mr. Tordil's criminal activity on May 5, 2016, was publicly available before the May 6, 2016, incident. For example, media coverage on May 5, 2016, and May 6, 2016, alerted the public to the fact that Mr. Tordil had committed a murder in Beltsville, Maryland and that he was at large. Pl. Resp. at 5-6; *see generally* Def. Mem. The local police also issued a "be on the lookout" document describing Mr. Tordil and his vehicle. Pl. Resp. at 5; Def. Reply at 6.

But, there are no facts in this case to show that the Mall Defendants were aware of this information. *See generally* Def. Mem.; Pl. Resp. Nor is there any evidence in this case to show that the Mall Defendants had any other information to indicate that Mr. Tordil would pose a specific threat to the Mall. *See generally* Def. Mem.; Pl. Resp.; *see also Nails*, 1998 WL 879511, at *2 (observing that the duty to take reasonable measures to eliminate conditions contributing to criminal activity arises primarily from criminal activities on the landlord's premises, rather than from activities in the neighborhood).[5] Given this, the undisputed material facts show that the Mall Defendants did not know of any dangerous conditions on the Mall's premises that could have contributed to criminal activity and that the Mall Defendants could not have reasonably anticipated that Mr. Tordil would pose a danger to the Mall or its patrons on May 6, 2016.

Second, the undisputed material facts also show that the Mall Defendants did not owe a

---

[5] Defendants acknowledge that Mr. Tordil was parked at the Mall for at least 20 minutes before the shooting occurred. Def. Reply at 15-16. But, there is no evidence in the record to show that the Defendants were aware of Mr. Tordil's presence at the Mall in advance of the shooting. Pl. Resp. at 19; Def. Reply at 16.

duty to warn Mr. Unger and Mr. Winffel of any dangerous condition on the Mall's premises. Under Maryland law, the owner of a premises can be found liable under a premises liability theory, if:  (1) the owner controlled a dangerous or defective condition; (2) the owner had knowledge or should have had knowledge of the injury-causing condition; and (3) the harm suffered was a foreseeable result of that condition.  *See Troxel*, 29 A.3d at 1048.  But, in this case, plaintiffs do not identify any dangerous or defective condition at the Mall that could have contributed to the May 6, 2016, incident.  *See generally* Compl.; Pl. Resp.  In fact, it is undisputed that a security camera was operating at the Mall at the time of the shooting and that several security guards were on duty at that time.  Def. Mem. at 17; *see generally* Pl. Resp.  As discussed above, the undisputed material facts also show that the Mall Defendants were not aware that Mr. Tordil posed any threat to the Mall or its patrons.  Given this, the Mall Defendants owed no duty to warn Mr. Unger and Mr. Winffel of any dangerous condition on the Mall's premises.

The undisputed material facts also show that the Mall Defendants (and defendant PSC) did not have a duty to take affirmative action to aid or to protect Mr. Unger and Mr. Winffel on May 6, 2016.  The Court of Appeals of Maryland has recognized that a business owner can have a duty to take affirmative action for the aid and protection of a business invitee.  *See Jackson*, 128 F. Supp. 2d at 311.  But, such a duty arises only when the business owner has knowledge of the business invitee's injury and giving aid would not place the owner into the path of danger. *See id.*  Here, it is undisputed that, unlike Mr. Tordil, defendants were not armed during the May 6, 2016, incident.  Def. Mem. at 22; *see generally* Pl. Resp.  Given this, the undisputed material facts show that defendants did not owe a duty to protect or to render aid to Mr. Unger and Mr. Winffel because they could not have done so without endangering themselves.  *See Jackson*, 128 F. Supp. 2d at 311.

As a final matter, plaintiffs' arguments to show that defendants owed Mr. Unger and Mr. Winffel a duty of care are not persuasive for several reasons.  First, plaintiffs argue that there is a legal duty in this case, because defendants failed to meet their standard of care on May 6, 2016. Pl. Resp. at 21-26.  But, plaintiffs provide no indication of what that standard of care would be. *See generally id.*  Plaintiffs' failure to do so at this mature stage in this litigation is left unexplained.  *See generally id.*  Given this, plaintiffs' claim that defendants failed to meet their standard of care in this case is not sufficient to defeat defendants' motion for summary judgment.

*See Celotex Corp.*, 477 U.S. at 323. ("[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."); *see also Anderson*, 477 U.S. at 256 (explaining that it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial).

Plaintiffs also argue without persuasion that the defendants breached a duty of care by failing to identify Mr. Tordil as a threat to Mall patrons and by failing to deter Mr. Tordil from entering the Mall on May 6, 2016. Pl. Resp. at 22. But, again, plaintiffs point to no case law or statute that would impose such a duty on the defendants. *See generally id.*; *Celotex Corp.*, 477 U.S. at 323.

Because the undisputed material facts in this case show that defendants did not owe a duty of care to Mr. Unger and Mr. Winffel, plaintiffs cannot prevail on their negligence and other tort claims in this case.[6] And so, the Court GRANTS defendants' motion for summary judgment and DISMISSES the complaint. *See* Fed. R. Civ. P. 56.

## V.   CONCLUSION

For the foregoing reasons, the Court:

1. **GRANTS** defendants' motion for summary judgment; and
2. **DISMISSES** the complaint.

The Clerk is directed to enter judgment accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

[6] Plaintiffs' wrongful death, loss of consortium, and survival claims are dependent upon a finding of negligence in this case. *See Palmer v. Urgo Hotels, L.P.*, No. 18-085, 2018 WL 5026372, at *2 n.1 (D. Md. Oct. 17, 2018) (stating that a loss of consortium claim is derivative of a negligence claim); *Madison v. Harford Cnty.*, No. 12-1120, 2013 WL 4008859, at *15-16 (D. Md. Aug. 2, 2013) (stating that survival and wrongful death claims do not impose liability on their own, but are dependent upon a plaintiff's substantive claims). Because the Court concludes that defendants did not owe Mr. Unger and Mr. Winffel a duty of care, the Court does not reach the remaining issues in defendants' motion for summary judgment.